IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SANDRA GACHTER, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-168-Y |
| | § | |
| CAROLYN COLVIN, | § | |
| ACTING COMMISIONER OF | § | |
| SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Sandra Gachter ("Gachter") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In June 2010,

Gachter protectively applied for social security benefits, alleging that her disability began on

May 14, 2009. (Transcript ("Tr.") 9, 114-15.) Her applications were denied initially and on

reconsideration, and Gachter requested a hearing before an administrative law judge ("ALJ").

(Tr. 9; *see* Tr. 62-71.) An ALJ held a hearing on July 14, 2011 and issued a decision on October

1

25, 2011 that Gachter was not disabled. (Tr. 6-15, 20-52.) On January 23, 2013, the Appeals Council denied Gachter's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-3.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, the Court employs a five-step analysis. 20 C.F.R. §§ 404.1520, 416.920 (2011). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the claimant has the

burden of proof to show that she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at the final step to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUE

In her brief, Gachter presents the following issues:

A.  Whether the ALJ erred in giving proper weight to the opinions of Gachter's treating physician, Claudio S. Lehmann, M.D. ("Dr. Lehmann"); and

B.  Whether the ALJ's credibility findings are supported by substantial evidence.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 11-20.)

3

## IV.   ADMINISTRATIVE RECORD

In his October 25, 2011 decision, the ALJ stated that Gachter met the disability insured status requirements of the SSA through December 31, 2014.  (Tr. 11.)  At the first step of the five-step analysis, the ALJ found that Gachter had not engaged in any substantial gainful activity since May 14, 2009, the alleged onset date for her disability.  (*Id.*)  The ALJ further found that Gachter worked part-time up until January 2011 but that such work did not rise to the level of substantial gainful activity ("SGA").  (Tr. 11.)  However, the ALJ found Gachter resumed work at substantial gainful activity levels in March 2011.  (Tr. 11.)  At the second step, the ALJ held that Gachter had the following severe impairments: "degenerative disc disease of the lumbar spine with fusion and removal of hardware."  (*Id.*)

At the third step, the ALJ found that Gachter did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing.  (Tr. 11.)  As to Gachter's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.  She must have the option to sit or stand at will.

(Tr. 12 (emphasis omitted).)  At step four, the ALJ concluded that, based on his RFC assessment and the testimony of a vocational expert ("VE"), Gachter was unable to perform any of her past relevant work.  (Tr. 14.)  At the fifth step, the ALJ considered Gachter's age, education, work experience, and RFC and found there to be a significant number of jobs in the national economy that Gachter could perform.  (Tr. 14-15.)  Accordingly, the ALJ concluded that Gachter was not disabled.  (Tr. 15.)

4

## V.   DISCUSSION

### A. Opinion of Treating Physician

First, Gachter argues that the ALJ erred in rejecting the opinions from Dr. Lehmann,

Gachter's treating physician. (Pl.'s Br. at 11-14.) Specifically, Gachter states:

> Here, Dr. Lehmann issued an opinion on March 8, 2011, in which he stated that Gachter could not maintain body posture consistent with full-time employment. (Tr. at 395.) He also noted that Gachter's fatigue and pain would prevent her from working full-time at even a sedentary position. (Tr. at 396, 397, 398.) The ALJ stated that he gave Dr. Lehmann's opinions "little weight," but Gachter argues that the ALJ gave the doctor's opinion no weight, as the ALJ findings do not reflect the doctor's limitations. (*See* Tr. at 12, 14.)
>
> Gachter also contends that the reason given for rejecting Dr. Lehmann's opinions was not the "good cause" or substantially supported reasons required by the regulations and precedent. The ALJ stated that he afforded Dr. Lehmann's opinions "little weight" because it was dated after Gachter claimed medical improvement. (Tr. at 14.) While it is unclear whether the ALJ determined that the opinion was not relevant to the time under consideration or whether the opinions were inconsistent with her return to substantial gainful activity, under either conclusion, the ALJ's reasoning fails.
>
> Dr. Lehmann's opinion was relevant to the time under consideration. Although the ALJ found that Gachter resumed substantial gainful activity in March 2011 (Tr. at 11), and Dr. Lehmann's opinion is dated March 8, 2011, Dr. Lehmann treated Gachter beginning in April 2010 and his opinion was based on his treatment relationship. (*See* Tr. at 395-98.) . . . . Dr. Lehmann's treatment records prior to Gachter's return to substantial gainful activity support his opinion regarding her functional limitations, and his opinions should have been considered under the treating opinion standard set forth by *Newton* and 20 C.F.R. § 404.1527. The ALJ failed to conduct such an analysis or provide "good cause for rejecting the opinions, therefore remand is necessary.
>
> Likewise, if the ALJ's findings are read to mean that Dr. Lehmann's opinions were inconsistent with Gachter's return to substantial gainful activity, substantial evidence would still not support the rejection of the doctor's treating opinions. . . . Again, Dr. Lehmann's opinions were consistent with his treatment of Gachter, other medical evidence in the record, and Gachter's work activity and activities of daily living. As such, they should have been given great or controlling weight absent good cause or the treating opinion analysis in *Newton* and 20 C.F.R. § 404.1527.

(Pl.'s Br. at 12-14.)

RFC is what an individual can still do despite her limitations.[1]  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do, but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[2] factors to be considered, and is based upon all of the relevant evidence in the case record.  *Id.* at *3–5.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5.  The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions,

---

[1] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[2] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at

*8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only

to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported

in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder

has the sole responsibility for weighing the evidence and may choose whichever physician's

diagnosis is most supported by the record.")

Furthermore, controlling weight is assigned to the opinions of a treating physician if it is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and not

inconsistent with other substantial evidence in the record.   20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706

F.2d 564, 568 (5th Cir. 1983).   While opinions on the ultimate issue of disability status are

reserved to the ALJ, he must consider all medical opinions.  20 C.F.R. §§ 404.1527(b), (d)(1),

416.927(b), (d)(1).  Because the determination of disability always remains the province of the

ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which

includes disregarding statements that are brief and conclusory, unsupported by acceptable

diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566;

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790.  Conclusory

statements to the effect that the claimant is disabled or unable to work are legal conclusions, not

medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(e),

416.927(e)*; see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical

evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating

physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c) *only* if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

8

In a Physical Capacities Evaluation dated March 8, 2011, Dr. Lehmann opined, *inter alia*, that Gachter: (1) could sit, stand, and walk less than one hour in an eight-hour day; (2) needed an opportunity to alternate sitting and standing at will throughout the day; (3) could never lift or carry twenty-one or more pounds and could frequently carry up to twenty pounds; (4) could never crouch; (5) could occasionally climb, stoop, kneel, crawl, and reach about shoulder level; (6) could frequently balance; (7) should have severe restrictions in activities involving being around moving machinery and exposure to marked changes in temperature and humidity; and (8) should have mild restrictions in activities involving unprotected heights, driving automotive equipment, and exposure to dust, fumes, and gases. (Tr. 395-96.) In addition, Dr. Lehmann stated that Gachter suffered from pain and also fatigue that was disabling to the extent that it prevented her from working full time, even in the sedentary position. (Tr. 396, 398.)

In evaluating the medical evidence in the record, the ALJ, stated, *inter alia*, the following:

> Kenneth Buley, M.D. evaluated her for left lower back, hip and leg pain with numbness and tingling on September 28, 2010 (Exhibit 6F). On examination, her back and lower limbs revealed no obvious asymmetry or deformity. Straight-leg raising was positive on the left and negative on the right. Her vascular status was intact in the lower extremities, and she had a full range of motion of both lower limbs. She had 5/5 muscle strength throughout the upper and lower limbs except for mild weakness in the left peroneus longus/ankle everters. Dr. Buley concluded that there was no electrophysiologic evidence to suggest a left L5 radiculopathy or other left or right lumbosacral radiculopathy (L2-S1), left or right lumbosacral plexopathy, focal left sciatic neuropathy, peroneal, or tibial neuropathy or peripheral polyneuropathy or myopathy.

> Claudio Lehman [sic], M.D., completed a physical residual functional capacity assessment on March 8, 2011 (Exhibit 11F). He indicated that she could lift up to 20 pounds frequently and stand, walk and sit for less than 1 hour in an 8-hour workday with additional postural, manipulative and environmental limitations.

9

(Tr. 13.)  In addition, the ALJ, reviewing some of the treatment records of Mark Wylie,

M.D. ("Dr. Wylie"), stated:

> She developed some back and buttocks pain related to painful hardware
> that was relieved temporarily by steroid injections (Exhibit 9F).  Although a CT
> scan showed excellent fusion at the L4-5, she underwent a hardware removal in
> October 2010 (Exhibit 8F).  In May 2011, she reported left leg pain.  However,
> examination notes show that her gait and station were normal and that she had no
> midline defects, masses or tufts of the lumbar spine.  [*See* Tr. 404.]  X-rays
> revealed excellent position of the hardware with no loosening or lucency around
> the screws.  [*Id.*]  An MRI showed a 5-1 high intensity zone and disk tear.  [*Id.*]
> She was prescribed medications such as Savella and Flexeril (Exhibit 13F).

(Tr. 13.)

As stated above, the ALJ found that Gachter had the RFC "to lift and/or carry 20

pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour

workday and sit for 6 hours in an 8-hour workday.  She must have the option to sit or

stand at will." (Tr. 12.)  In making such determination, the ALJ stated:

> As mentioned earlier, the record also reflects work activity after the
> alleged onset date.  Although that work activity did not constitute disqualifying
> substantial gainful activity, it does indicate that the claimant's daily activities
> have, at least at times, been somewhat greater than the claimant has generally
> reported.  In addition, the claimant has described daily activities which are not
> limited to the extent one would expect, given the complaints of disabling
> symptoms and limitations.  She testified that she is able to take care of her
> personal hygiene, prepare quick meals, water her flowers, shop in stores and drive
> for short periods.
>
> As for the opinion evidence, after reviewing all of the evidence, including
> the testimony at the hearing, the undersigned has given great weight to the
> opinion of the state agency medical consultant as it is consistent with the evidence
> of record.  The opinion of Dr. Lehman [sic] is afforded little weight as it is after
> the date that the claimant indicated medical improvement.
>
> In sum, the above residual functional capacity assessment is supported by
> the claimant's testimony in light of her medical treatment history, the medical
> signs and findings, including a CT scan of her lumbar spine showing excellent
> fusion at the L4-5 and an MRI showing a disk tear; examination notes showing
> that her gait and station were normal and that she had no midline defects, masses

or tufts of the lumbar spine; her work activity after the alleged onset date, her activities of daily living and the opinion of the state agency medical consultant.

(Tr. 13-14.)

Contrary to Gachter's contentions, the ALJ did not reject all of Dr. Lehmann's opinions in formulating the RFC determination. While the ALJ stated that he was giving Dr. Lehmann's opinions in the March 8, 2011 Physical Capacities Evaluation "little weight," it is clear that the ALJ actually adopted some of Dr. Lehmann's opinions in the RFC determination. For example, the ALJ adopted Dr. Lehmann's opinion that Gachter needed to alternate sitting and standing at will and that Gachter could carry up to ten pounds frequently.[3] (Tr. 12, 395.)

Moreover, as stated above, when there is reliable medical evidence from a treating or examining physician that controverts the treating physician's opinion, the ALJ may reject the opinion of the treating physician without performing the detailed analysis required by 20 C.F.R. §§ 404.1527(c), 416.927(c). *See Newton*, 209 F.3d at 453 ("[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[e]."). In this case, a careful review of the ALJ's decision indicates that the ALJ relied, *inter alia*, on the medical evidence and opinions from Dr. Buley, an examining physician, and Dr. Wylie, a treating physician, in formulating his RFC determination and, in turn, rejecting *some* of the opinions of Dr. Lehmann. (Tr. 13-14.) Consequently, the ALJ was not required to perform the detailed analysis as required by 20 C.F.R. §§ 404.1527(c) and 416.927(c).

Furthermore, the ALJ sufficiently demonstrated good cause for rejecting portions of Dr. Lehmann's opinions. In giving "little weight" to Dr. Lehmann's opinion in the March 8, 2011

---

[3] The Court notes that Dr. Lehmann opined that Gachter could carry from 0 to 5 pounds frequently, 6 to 10 pounds frequently, and 11 to 20 pounds frequently. (Tr. 396.)

11

PRFCA, the ALJ specifically stated that such assessment was "after the date that the claimant indicated medical improvement." (Tr. 14.) While Gachter disagrees with such reasoning, the ALJ's statement is a true statement, especially in light of the other medical evidence in the record, and provides "good cause" for rejecting those portions of Dr. Lehmann's opinions that are not supported by other evidence in the record. Because the ALJ properly considered the opinion of Dr. Lehmann and provided good cause for rejecting his opinions, the Court concludes that the ALJ did not err. Consequently, remand is not required.

Moreover, there is substantial evidence in the record, including "the medical signs and findings" in the record, Gachter's work activity after the alleged onset date, Gachter's activities of daily living, and the state agency medical consultant opinion,[4] that supports the ALJ's RFC and disability determination. (Tr. 14.) Consequently, any error relating to the failure of the ALJ to properly analyze Dr. Lehmann's opinions would be harmless error. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *72 (N.D. Tex. Mar. 28, 2013) (applying harmless error analysis to the ALJ's improper evaluation of opinion of treating physician); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (in the Fifth Circuit, harmless error exists when it is inconceivable that a different administration conclusion would have been reached absent the error).

---

[4] In a Physical Residual Functional Capacity Assessment dated August 27, 2010, State Agency Medical Consultant ("SAMC") Laurence Ligon, M.D. ("SAMC Ligon") opined that Gachter: (1) could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently; (2) could sit, stand, and/or walk for a total of about six hours in an eight-hour workday; (3) had the unlimited ability to push and/or pull (except as shown for lift and/or carry); (4) could never climb ladders, ropes, or scaffolds; (5) could frequently balance; and (6) could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (Tr. 314-21.) SAMC James Wright, M.D., affirmed SAMC Ligon's PRFCA in a Case Assessment Form dated December 2, 2010. (Tr. 394.)

## B. **Credibility**

Gachter also argues that the ALJ's credibility findings were not supported by substantial evidence. (Pl.'s Br. at 14-20.) Specifically, Gachter argues that the ALJ placed too much emphasis on Gachter's refusal to take pain medication as evidence that her pain was not as severe as she alleged when the evidence also shows that Gachter did not take the pain medication because it did not help with her pain. (Pl.'s Br. at 16.) Gachter claims that the "ALJ failed to show how Gachter's refusal to take pain medication, which proved to be ineffective, undermined her credibility." (Pl.'s Br. at 16.) In addition, Gachter argued that the evidence in the record supports her claims that her pain was severe. (Pl.'s Br. at 16-17.) Furthermore, Gachter argues that the ALJ's reliance on her attempts to work "was not good cause or a substantially supported reason for finding her allegations incredible." (Pl.'s Br. at 18.) Finally, Gachter, citing to cases from the U.S. Court of Appeals for the Eighth Circuit, claims that the ALJ failed to explain how Gachter's ability to do certain activities of daily living was inconsistent with her allegation of disability and that performing such activities "are generally not considered to be equivalent to an ability to perform substantial gainful activity." (Pl.'s Br. at 18, citing *Draper v. Barnhart*, 425 F.3d 1127, 1130-31 (8th Cir. 2005).)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *1. A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be

accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. §§ 404.1529, 416.929.

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 95-5p, 1995 WL 670415, at *2 (S.S.A. Oct. 31, 1995). A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 416.929.

When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional

limitations and restrictions due to pain or other symptoms.  20 CFR §§ 404.1529(c), 416.929(c);

SSR 96-7p, 1996 WL 374186, at *3.  An ALJ's unfavorable credibility evaluation will not be

upheld on judicial review where the uncontroverted medical evidence shows a basis for the

claimant's complaints unless the ALJ weighs the objective medical evidence and articulates

reasons for discrediting the claimant's subjective complaints.  *Abshire v. Bowen*, 848 F.2d 638,

642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

In evaluating Gachter's credibility, the ALJ stated:

> In considering the claimant's symptoms, the undersigned must follow a
> two-step process in which it must first be determined whether there is an
> underlying medically determinable physical or mental impairments(s)—i.e., an
> impairment(s) that can be shown by medically acceptable clinical and laboratory
> diagnostic techniques—that could reasonably be expected to produce the
> claimant's pain or other symptoms.

> Second, once an underlying physical or mental impairment(s) that could
> reasonably be expected to produce the claimant's pain or other symptoms has
> been shown, the undersigned must evaluate the intensity, persistence, and limiting
> effects of the claimant's symptoms to determine the extent to which they limit the
> claimant's functioning.  For this purpose, whenever statements about the
> intensity, persistence, of functionally limiting effects of pain or other symptoms
> are not substantiated by objective medical evidence, the undersigned must make a
> finding on the credibility of the statements based on a consideration of the entire
> case record.

> . . . .

> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be expected to
> cause the alleged symptoms; however, the claimant's statements concerning the
> intensity, persistence and limiting effects of these symptoms are not credible to
> the extent that they are inconsistent with the above residual functional capacity
> assessment.

> . . . .

> In evaluating the credibility of the claimant's subjective complaints and
> alleged limitations, the claimant has worked steadily in the past, which suggests
> good work motivation and lends further credibility to the allegations of disabling

> symptoms. However, she refuses to take any pain medications even though she rates pain as a constant 7 to 8 on a 10-point scale.
>
> As mentioned earlier, the record also reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. In addition, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She testified that she is able to take care of her personal hygiene, prepare quick meals, water her flowers, shop in stores and drive for short periods.

(Tr. 12-13.)

It is clear in this case that the ALJ properly considered Gachter's credibility and, contrary to Gachter's claims, the evidence in the record supports the ALJ's credibility determinations. While Gachter disputes the ALJ's interpretation regarding Gachter's refusal to take pain medication as evidence that her pain was not severe as she alleged, Gachter did state at the hearing that pain medication was "one of the things I refused to take." (Tr. 33.) While Gachter also indicated that the pain medications were not helping with her pain, the ALJ's statement regarding her testimony was not incorrect. (Tr. 33-34.) Furthermore, the ALJ was clearly aware of and considered Gachter's allegations of pain as the ALJ discussed some of the evidence in the record that indicated Gachter was having pain. (*See* Tr. 12-13.)

Moreover, the ALJ also relied on other evidence in the record in making such credibility determination, specifically that Gachter has "worked steadily in the past." (Tr. 13.) While Gachter disagrees with the use of Gachter's work attempts as evidence to diminish Gachter's credibility, the credibility assessment of a claimant is a matter particularly within the province of the ALJ, and the Court cannot substitute its judgment for the ALJ's unless that determination has no evidentiary support whatsoever. In this case, the evidence supports the ALJ's statement regarding Gachter's ability to work as she did, in essence, work part-time up until January 2011

and resumed substantial gainful work activity in March 2011.  (Tr. 11; *see* Tr. 138-44, 195.)

While the part-time work referenced by the ALJ in his credibility determination was not

substantial gainful activity, such activity further supports the ALJ's credibility finding that

Gachter was not as functionally limited as claimed.  *See, e.g.*, *Copenhaver v. Astrue*, No. A-09-

CA-838-SS, 2011 WL 891617, at *12 (W.D. Tex. Mar. 11, 2011).

Furthermore, the ALJ also relied on the fact that Gachter's daily activities have "been

somewhat greater than the claimant has generally reported" in making his credibility

determination.[5]  (Tr. 13.)  While Gachter claims that the ALJ erred in failing to explain how her

limited activities of daily living are inconsistent with Gachter's allegation of disability, the Court

notes that it is appropriate to consider the claimant's daily activities when deciding the

claimant's disability status.  *See Leggett*, 67 F.3d at 565 n.12; *Copenhaver*, 2011 WL 891617, at

*12 ("Specifically, inconsistencies between a claimant's testimony about her limitations and her

daily activities may be quite relevant in evaluating credibility.")  Moreover, the ALJ did not

discount all of Gachter's complaints of pain and limitations of daily activities.  (Tr. 12-13.)

Instead, the ALJ only discounted her subjective complaints and credibility to the extent they

were inconsistent with the ALJ's RFC determination.  (Tr. 12.)  Because substantial evidence

supports the ALJ's credibility determination, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

---

[5] The Court notes that Gachter, citing to 20 C.F.R. § 404.1572(c), claims that the "activities such as taking care of yourself or performing simple household tasks are generally not considered to be equivalent to an ability to perform substantial gainful activity."  In this case, however, the ALJ did not use Gachter's activities of daily living to find that she was able to engage in substantial gainful activity.  Instead, the ALJ reviewed such activities in making his credibility determination.

17

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 21, 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 7, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE